# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| ELIZABETH ROACH<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, JOHN DOE (1-10) FICTITIOUS NAMES, and JOHN DOE, INC. (1-10) FICTITIOUS NAMES,<br><br>Defendants. | Civil Action No. 23-02210 (RMB/EAP)<br><br>**OPINION** |

**APPEARANCES:**

Oliver T. Barry
BARRY, CORRADO & GRASSI, P.C.
2700 Pacific Avenue
Wildwood, New Jersey 08260

   *On behalf of Plaintiff Elizabeth Roach*

Jeffrey A. Carr
Kristin H. Jones
Nicole E. Crossey
TROUTMAN PEPPER HAMILTON SANDERS LLP.
301 Carnegie Center, Suite 400
Princeton, New Jersey 08543

   *On behalf of Defendant Allstate Insurance Company*

**RENÉE MARIE BUMB, Chief United States District Judge:**

This is an insurance dispute regarding the applicability of the recently enacted New Jersey Insurance Fair Conduct Act ("**IFCA**"), N.J. Stat. Ann. § 17:29BB-1, *et seq.*, to an insured's allegations of bad faith denial of her claim for underinsured motorist ("**UIM**") benefits following an automobile accident that left her seriously injured. Before the Court is a Motion to Dismiss filed by Defendant Allstate Insurance Company ("**Defendant**") pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking to dismiss the IFCA claim asserted by Plaintiff Elizabeth Roach ("**Plaintiff**"). [Docket No. 11.] The question presented is whether IFCA applies to a UIM claim that was pending in a state-court litigation at the time the statute became effective on January 18, 2022. It is undisputed that Defendant first denied the UIM claim prior to the passage of IFCA. [*See* Compl. ¶¶ 11, 15, Docket No. 1-2.] Because the Legislature provided that IFCA "shall take effect immediately," 2021 N.J. Laws Ch. 388, § 4, and such language has been construed by the New Jersey Supreme Court to mean that a law only applies to claims that arise *after* the law's effective date,[1] this Court concludes that IFCA does not apply to Plaintiff's claim. For this reason, as further explained below, the Motion to Dismiss will be **GRANTED**.

---

[1] *See, e.g.*, *Cruz v. Cent. Jersey Landscaping, Inc.*, 947 A.2d 1228, 1237 (N.J. 2008) (explaining that "shall take effect immediately" "bespeak[s] an intent contrary to, and not supportive of, retroactive application") (citation omitted); *Johnson v. Roselle EZ Quick LLC*, 143 A.3d 254, 265 (N.J. 2016) ("Had the Legislature sought to apply the amendment to all pending claims, it could have adopted the approach taken in other amendments, such as applying it to 'all actions and proceedings that accrue, *are pending* or are filed' at the time of enactment.") (citation omitted).

## I.    BACKGROUND

The factual allegations in this matter are straightforward.[2]  On January 16, 2019, Plaintiff was injured in an automobile accident.  [Compl. ¶¶ 5–7, Docket No. 1-2.]  An intoxicated driver crashed a vehicle owned by his mother into Plaintiff's vehicle while they were both driving in Cape May County, New Jersey.  [*Id.*]  The crash resulted in serious damages to Plaintiff, including permanent spinal injuries.  [*Id.* ¶¶ 7, 12.]  On December 9, 2019, Plaintiff filed suit against the intoxicated driver and his mother in New Jersey Superior Court.  [*Id.* ¶ 9.]   Believing both parties to be underinsured, Plaintiff filed an amended complaint on May 22, 2020, seeking UIM benefits from Defendant under an applicable insurance policy providing up to $250,000 of UIM coverage.  [*Id.* ¶¶ 8, 11.]  On September 9, 2020, Plaintiff settled her claims against the intoxicated driver and his mother, [*id.* ¶ 10], but Defendant maintained a "no-pay" position on her insurance claim throughout the litigation, [*id.* ¶ 15].  The parties and their expert witnesses disputed whether the automobile accident was the proximate cause of Plaintiff's spinal injury.  [*See id.* ¶¶ 14–15.]

Ultimately, a jury agreed with Plaintiff and returned a $4 million verdict in her favor.  [*Id.* ¶ 16.]  On February 22, 2023, the trial court entered judgment molding the verdict to $150,000 in accordance with the insurance policy, but "without prejudice to any bad faith rights or claims of Plaintiff."  [*Id.* ¶ 17; *see also* Trial Ct. Order at 3, Docket

---

[2] As required, the Court draws all factual allegations from the Complaint and accepts all well-pleaded allegations as true.  *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005) (citations omitted).

No. 12-1 (providing that judgment is "without prejudice to any bad faith interests, rights, or claims of Plaintiff to collect additional damages . . . whether based on common law or [IFCA]").]

On March 8, 2023, Plaintiff filed this action against Defendant in New Jersey Superior Court asserting, in a single count, (1) a violation of IFCA, (2) breach of fiduciary duty, and/or (3) breach of the covenant of good faith and fair dealing. [Compl. ¶¶ 18–23.]  In support of her claim(s), Plaintiff alleges that Defendant's "no-pay position throughout years of litigation" constitutes an unreasonable denial of her claim for UIM benefits.  [*Id.* ¶¶ 20, 22.]  This is so, according to Plaintiff, because of the strength of the evidence adduced during the proceedings.  [*See id.* ¶¶ 20, 21.]

Defendant timely removed this action pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), [*see generally* Notice of Removal, Docket No. 1[3]], and the Court's jurisdiction is properly established.[4]  On May 11, 2023, Defendant filed a pre-motion letter

---

[3] Defendant acknowledged service of the Complaint on March 22, 2023, [Notice of Removal ¶ 3, Docket No. 1], and the Notice of Removal was filed on April 20, 2023, [*see generally* Docket].  The action was thus removed within 30 days after receipt of the Complaint.  *See* 28 U.S.C. § 1446(b)(1).

[4] The Court exercises subject matter jurisdiction over the claim(s) asserted in this action.  Plaintiff is a citizen of New Jersey, and Defendant is a corporation organized and with a principal place of business in Illinois.  [Compl. ¶ 1, Docket No. 1-2; Notice of Removal ¶¶ 11–13, Docket No. 1; Diversity Disclosure Statement, Docket No. 5.]  Therefore, the parties are completely diverse from one another.  *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (citations omitted).  Under IFCA, Plaintiff could recover up to three times her actual damages, in addition to pre- and post-judgment interest, attorneys' fees, and litigation expenses.  N.J. Stat. Ann. § 17:19BB-3.  Thus, the action also meets the jurisdictional threshold.  *See Frederico v. Home Depot*, 507 F.3d 188, 194 (3d Cir. 2007) (explaining that removal is improper if it appears to a "legal certainty" that the plaintiff cannot recover more

pursuant to Rule I.A of the Court's Individual Rules and Procedures identifying its intention to move to dismiss the IFCA claim.  [Docket No. 7.]  Plaintiff responded on May 23, 2023.  [Docket No. 9.]  Observing that a pre-motion conference would not be productive, the Court allowed Defendant to proceed with its contemplated motion and directed the parties to focus their briefing on whether the alleged IFCA violation "constitutes an ongoing offense, and if not, when the alleged violation occurred." [Text Order, Docket No. 10 (filed May 25, 2023).]

On May 31, 2023, Defendant filed its Motion to Dismiss Plaintiff's IFCA claim pursuant to Federal Rule of Civil Procedures 12(b)(6).  [Docket No. 11.]  Defendant argues that the IFCA claim should be dismissed because the act does not apply to conduct that precedes the effective date of the statute, and it contends that a "continuing" denial or delay of a claim for insurance benefits cannot support an IFCA claim.  [Def.'s Br., Docket No. 11-1.]  Plaintiff opposed the Motion on June 20, 2023. [Pl.'s Opp'n, Docket No. 12.]  Plaintiff appears to concede that IFCA does not apply to pre-IFCA conduct, but she contends that maintaining a "no-pay" position in bad faith following the enactment of IFCA can constitute a cause of action under the statute.  [*Id.*]  On June 26, 2023, Defendant replied, arguing that Plaintiff's claim accrued prior to January 2022 and "continuing conduct" is not a recognized exception to the rule favoring prospective application of law.  [Def.'s Reply Br., Docket No. 13.] As the Motion is fully briefed, it is ripe for adjudication.

---

than $75,000).  Accordingly, the Court has diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(1).

## II.   LEGAL STANDARDS

A pleading is generally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To comply with this rule requiring a plaintiff to provide the "grounds" of her entitlement to relief, the plaintiff must allege more than mere labels and conclusions or a "formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and she must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint, including all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005) (citations omitted). The motion should be granted if the court cannot grant the relief requested under any set of facts that could be proved. *Id.* at 351 (citation omitted). A court need not accept "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986). *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (observing

that a court need not credit any "bald assertions" or "legal conclusions") (citation omitted).   A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Resolution of a question of statutory interpretation is appropriately decided on a motion to dismiss.  *See, e.g.*, *Duncan v. Jack Henry & Assocs., Inc.*, 617 F. Supp. 3d 1011, 1054 n.30 (W.D. Mo. 2022) ("Federal courts routinely consider questions of law, including matters of statutory interpretation, even at the motion to dismiss stage.") (collecting cases); *Dawson v. Allstate N.J. Prop. & Cas. Ins. Co.*, Case No. GLO-L-0440-22 (N.J. Super. Ct. Law Div. Aug. 5, 2022) (determining whether IFCA applies retroactively after observing that a question of law is appropriately heard at motion to dismiss stage to determine whether cause of action is plausible based on the facts alleged) (citing *Grillo v. State*, 263 A.3d 520, 523 (N.J. Super. Ct. App. Div. 2021)).

## III.  DISCUSSION

Defendant seeks dismissal of Plaintiff's IFCA claim for three reasons.  First, Defendant argues that IFCA does not apply to allegations of bad faith conduct that occurred before the statute's effective date because the enacting legislation clearly indicates that the act shall take effect "immediately." [Def.'s Br. at 8–13.]  Second, Defendant contends that an alleged "continuing" delay or denial of insurance benefits cannot support an IFCA claim.  [*Id.* at 13–19.]  And third, Defendant claims that application of IFCA to the circumstances of this case would present a manifest

injustice.  [*Id.* at 19–23.]  In opposition, Plaintiff argues that IFCA's cause of action extends to UIM claims subject to litigation pending at the time of the act's passage.  [Pl.'s Opp'n at 5–19.]  She also submits that Defendant's allegedly bad faith denial of her claim continued after IFCA because Defendant maintained a "no-pay" litigation position in bad faith.  [*Id.* at 17.]  Plaintiff contends that IFCA's nature, explicit text, and legislative history support these results.  [*Id.* at 5–19.]  The Court addresses the parties' arguments in turn.

### A.    The New Jersey Insurance Fair Conduct Act (IFCA).

On January 18, 2022, Governor Philip D. Murphy signed IFCA into law.  Press Release, Governor Murphy, State of N.J., *Governor Murphy Takes Action on Legislation* (Jan. 18, 2022),    https://nj.gov/governor/news/news/562022/20220118f.shtml [https://perma.cc/KH4P-U9QA].  The act provides a cause of action to a first-party claimant[5] to sue her insurer for "an unreasonable delay or unreasonable denial of a claim for payment of benefits" under an uninsured motorist (UM) or underinsured motorist (UIM) policy.  N.J. Stat. Ann. § 17:29BB-3.  A prevailing claimant is entitled to actual damages up to three times the coverage amount, pre- and post-judgment interest, attorneys' fees, and litigation expenses.  *Id.*  As noted above, the enacting legislation provides that IFCA "shall take effect immediately."  2021 N.J. Laws Ch. 388, § 4.

---

[5] A "first-party claimant" or "claimant" is "an individual injured in a motor vehicle accident and entitled to the uninsured or underinsured motorist coverage of an insurance policy asserting an entitlement to benefits owed directly to or on behalf of an insured under that insurance policy."  N.J. Stat. Ann. § 17:29BB-2.

### B.    Principles of Interpretation.

Before proceeding to consider whether IFCA applies to the allegations of bad faith conduct here, the Court first observes that there does not appear to be any binding interpretations of the statute that would resolve the question presented.  *See Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010) (indicating that, when construing state law, the decisions of the state's supreme court are authoritative) (citing *State Farm Mut. Auto Ins. Co. v. Coviello*, 233 F.3d 710, 713 (3d Cir. 2000)).  This Court's duty is thus to "predict" how the New Jersey Supreme Court would construe IFCA if confronted with the same interpretive question.  *See id.* (citing *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004)).  To make this prediction, the Court's task is to "look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," among other persuasive authority, to determine "how the highest court in the state would decide the issue at hand."  *Id.*  (citing *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008)).  Federal courts routinely engage in this exercise when construing and applying state statutes in diversity jurisdiction cases.  *See, e.g.*, *Kanter ex rel. Estate of Schwartz v. Equitable Life Assur. Soc. of U.S.*, 2011 WL 1325143, at *8–9 (D.N.J. Mar. 31, 2011) (considering state-court decisions to determine the requirements of furnishing a defendant with notice under New Jersey's Slayer Act).

Accordingly, this Court engages familiar principles of statutory interpretation " 'to determine as best we can the intent of the Legislature, and to give effect to that

intent.' " *State v. Lane*, 276 A.3d 114, 120 (N.J. 2022) (quoting *State v. Robinson*, 92 A.3d 656, 661 (N.J. 2014)).  To do so, the Court "look[s] to the statute's language and gives those terms their plain and ordinary meaning."  *State v. J.V.*, 231 A.3d 710, 716 (N.J. 2020) (citing *DiProspero v. Penn*, 874 A.2d 1039, 1048 (N.J. 2005)).  "If, based on a plain and ordinary reading of the statute, the statutory terms are clear and unambiguous, then the interpretative process ends, and we 'apply the law as written.' " *Id.* (quoting *Murray v. Plainfield Rescue Squad*, 46 A.3d 1262, 1269 (N.J. 2012)).  "A court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language."  *J.V.*, 231 A.3d at 716 (quoting *O'Connell v. State*, 795 A.2d 857, 859 (N.J. 2002)) (internal quotation marks omitted) (cleaned up).  Only where the text is ambiguous may a court turn to extrinsic evidence, including legislative history, to discern the Legislature's intent.  *See id.*

## C.   The Presumption of Prospectivity.

Under the well-settled rule of statutory construction, statutes are presumed to apply prospectively.  *James v. N.J. Mfrs. Ins. Co.*, 83 A.3d 70, 77 (N.J. 2014) (citations omitted).  The presumption is based on the "fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair."  *Gibbons v. Gibbons*, 432 A.2d 80, 84 (N.J. 1981) (citation omitted).  "This preference is based on our long-held notions of fairness and due process[,]" *Cruz v. Cent. Jersey Landscaping, Inc.*, 947 A.2d 1228, 1235 (N.J. 2008) (citing *Gibbons*, 432 A.2d at 84), because,

10

"although everyone is presumed to know the law, no one is expected to anticipate a law that has yet to be enacted[,]" *Maeker v. Ross*, 99 A.3d 795, 802 (N.J. 2014) (citation omitted); *accord J.V.*, 231 A.3d at 716 (explaining that the presumption carries in the criminal context inasmuch as the civil context).

Still, while the presumption of prospectivity is a " 'sound rule of statutory interpretation,' " *Cruz*, 947 A.2d at 1235 (quoting *Rothman v. Rothman*, 320 A.2d 496, 499 (N.J. 1974)), it may be overcome if the Legislature intended for the statute to apply retroactively and retroactive application would not interfere with "vested rights" or result in a "manifest injustice." *James*, 83 A.3d at 77 (quoting *In re D.C.*, 679 A.2d 634, 644 (N.J. 1996)); *Phillips v. Curiale*, 608 A.2d 895, 900 (N.J. 1992); *Twiss v. State*, 591 A.2d 913, 915–16 (1991); *Gibbons*, 432 A.2d at 84, 85–86.  Applying this two-part test, the New Jersey Supreme Court has explained that the presumption of prospectivity may be rebutted in three circumstances:  "(1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant." *James*, 83 A.3d at 77 (citations omitted).  "Only if one of these grounds is present[] will we give a statute retroactive effect." *Cruz*, 947 A.2d at 1236.

### D.   Whether Plaintiff has Stated a Viable IFCA Claim.

Defendant seeks the dismissal of Plaintiff's IFCA claim.  In support, it argues that IFCA only applies prospectively because the text of the statute clearly requires this result, none of the exceptions to the presumption applies, and retroactive

application in these circumstances would present a manifest injustice. [Def.'s Br. at 8–13.] Plaintiff reframes the dispute as one of whether IFCA applies to a disputed claim for UIM benefits *pending* in a litigation at the time of IFCA's enactment. [Pl.'s Opp'n at 6–7.] She also contends that Defendant's unreasonable delay in satisfying her claim for benefits, even if originally denied before January 2022, constituted a "continuing violation" during the litigation. [*Id.* at 7.] The Court first examines the plain language of the statute as a "starting point" to discern the intent of the Legislature, *James*, 83 A.3d at 79, before turning to the other exceptions to the presumption of prospectivity and Plaintiff's "continuing violation" theory.

### 1.    The Plain Language of IFCA and the Legislature's Intent.

Under IFCA, a claimant who is "unreasonably denied a claim for coverage or payment of benefits, or who experiences an unreasonable delay for coverage or payment of benefits, under an uninsured or underinsured motorist policy" may sue her automobile insurer. N.J. Stat. § 17:29BB-3. The act thus creates liability for an insurer's (1) "unreasonable delay or unreasonable denial of a claim for payment of benefits under" the insurance policy or (2) "violation of the provisions of [the New Jersey Unfair Claims Settlement Practices Act, N.J. Stat. Ann. § 17:29B-4]." *Id.* A claimant was first able to avail herself of the statutory cause of action for bad faith conduct when the law became effective on January 18, 2022. The legislation expressly provides that IFCA "shall take effect immediately." 2021 N.J. Laws Ch. 388, § 4.

The New Jersey Supreme Court has interpreted this exact language—"shall take effect immediately"—to "bespeak an intent contrary to, and not supportive of,

retroactive application." *Cruz*, 947 A.2d at 1237.   The Court has reaffirmed this interpretation and rejected attempts to depart from the presumption of prospectivity where this language was employed. *See Johnson v. Roselle EZ Quick LLC*, 143 A.3d 254, 265–66 (N.J. 2016); *James*, 83 A.3d at 80.   As the parties discuss these cases in their briefs, [see Def.'s Br. at 10–12; Pl.'s Opp'n at 11–13], the Court determines that more extensive treatment is warranted.

In *Cruz*, the court considered whether a 2004 amendment to the schedule of workers' compensation death benefits under a state law scheme was intended to apply retroactively.   947 A.2d at 1230.   The amendment replaced a tiered benefits system with a flat rate of seventy percent of the decedent's wages.   *Id.*   The claimants in *Cruz* were indisputably entitled to death benefits, but the question presented was whether they were entitled to the amended flat rate or the pre-amendment, graduated-tier benefits.   *Id.* at 1231.   At the time of the amendment's passage, some of the claimants had petitions for benefits pending, and some had benefits awards already finalized.   *Id.* at 1235.   Noting the general presumption of prospectivity, the court explained that nothing in the amendment or in the legislative history suggested "retroactive effect of any kind."   *Id.* at 1237.   Supporting its conclusion, the court determined that an accompanying fiscal note contained no analysis of the financial impact of the amendment on previously settled or existing claims.   *Id.*   This suggested, the court explained, that the amendment was only to apply to claims submitted after the law's effective date.   *Id.*   Concluding otherwise, the court noted, "would raise the specter

that all of the awards that have been entered in years past would be reopened to permit an increase in benefits as of [the amendment's effective date]." *Id.*

In *James*, the court considered an amendment that prohibited "step-down" provisions in certain policies issued to corporate entities that provided less UM/UIM insurance coverage to employees.  83 A.3d at 72.  The employee in *James* had been injured while driving a company car before the amendment was enacted.  *Id.* at 74.  He submitted a claim for insurance benefits prior to the amendment's passage as well.  *Id.*  When the amendment came into effect, the enacting legislation provided that it "shall take effect immediately."  *Id.* at 77.  Considering this plain language in combination with the operative sentences of the proscription, the *James* court held that the Legislature intended for the amendment to affect employees seeking coverage for accidents occurring after the law's effective date, and not before.  *Id.* at 81.  "[H]ad the Legislature intended an earlier date for the law to take effect, that intention could have been made plain in the very section directing when the law would become effective."  *Id.* at 80 (citation omitted).  In short, then, the text of the statute revealed that the Legislature did not intend a retroactive application.  *Id.* at 80–81.

In *Johnson*, the court considered whether a 2011 amendment to N.J. Stat. Ann. § 39:6A–9.1 was intended to apply retroactively.  143 A.3d at 257.  The amendment provided that "a personal injury protection (PIP) insurance provider may be reimbursed for payments made to an injured insured party by the tortfeasor's insurer only after the injured party's claim is fully satisfied."  *Id.*  The Legislature provided

that the amendment was to "take effect immediately." *Id.* at 259. The amendment was enacted more than a year after the claimant was injured and over five months after he submitted a claim for PIP benefits. *Id.* Like in *Cruz* and in *James*, the *Johnson* court held that the 2011 amendment included no language indicating a retroactive intent. *Id.* at 265. "Had the Legislature sought to apply the amendment to all pending claims," the court explained, "it could have adopted the approach taken in other amendments, such as applying it to 'all actions and proceedings that accrue, *are pending* or are filed' at the time of enactment." *Id.* (quoting *Phillips*, 608 A.2d at 897). "That it did not do so indicates a lack of intent to depart from the standard practice of prospective application." *Id.* (citing *Maeker*, 99 A.3d at 802).

Here, Plaintiff argues that *James* and *Johnson* are distinguishable because they address statutes that accomplished substantive changes to the obligations of existing UM/UIM insurance policies, whereas IFCA represents a new cause of action for bad faith *conduct* in processing a claim under such policies. [Pl.'s Opp'n at 11–13.] According to Plaintiff, the Legislature clearly intended IFCA to apply to pending UM/UIM claims. [*See id.* at 12–13.] Defendant asserts that IFCA cannot be understood to apply to an accident or a claim that precedes the statute's effective date in light of *James* because UM/UIM claims " 'arise at the time of the accident' " and UM/UIM policies are occurrence-based.[6] [Def.'s Br. at 10 (quoting *Green v. Selective*

---

[6] Motor vehicle insurance policies are generally "occurrence" policies, meaning that their benefits are triggered on the date of the "occurrence"—usually an accident.

*Ins. Co. of Am.*, 144 N.J. 344, 353 (1996)).]  An IFCA claim may only accrue if the underlying accident precedes the statute's effective date, Defendant asserts.  [*See id.* at 12 ("By proscribing that the statute has immediate effect, the Legislature spoke clearly in favor of applying the IFCA only to accidents that occur after the law's enactment.").]

Neither party is entirely correct.  As Plaintiff rightly points out, "IFCA addresses conduct." [Pl.'s Opp'n at 12.]  The inquiry under the act is not when the underlying accident *occurs* or even when the claim for insurance benefits *accrues*. Rather, it is when a claim for benefits is *denied* or, having been submitted, an unreasonable delay *ensues.*  See N.J. Stat. Ann. § 17:29BB-3.  At such moment, liability for bad faith conduct attaches.  *See Tawfiles v. Wilson*, Case No. MON-L-0178-23 (N.J. Super. Ct. Law Div. Mar. 22, 2023) (denying motion to dismiss IFCA claim where insurance benefits demand occurred *after* effective date of statute, even though automobile accident occurred beforehand, and observing that the "cause of action cannot arise until after a claim has been made" and "nothing in the statute's text" provides that the "cause of action is tethered to the date of the underlying automobile accident").  However, the focus on bad faith conduct does not mean that a pre-IFCA claim denial can render an insurer liable for a cause of action that took effect *after* such conduct occurred.  The uniform interpretation of the statutory language—"shall take effect immediately"—does not support that result.

---

*See James*, 83 A.3d at 82 (citing *Zuckerman v. Nat'l Union Fire Ins. Co.*, 495 A.2d 395, 399 (N.J. 1985)).

Having examined the plain and unambiguous language of IFCA and the foregoing decisions, this Court presumes, as New Jersey courts would, that the Legislature is "aware of judicial construction of its enactments," *N.J. Democratic Party, Inc. v. Samson*, 814 A.2d 1028, 1039 n.6 (N.J. 2002) (citing *Brewer v. Porch*, 249 A.2d 388, 391 (N.J. 1969)); *see also Johnson v. Scaccetti*, 927 A.2d 1269, 1281 (N.J. 2007); *Quaremba v. Allan*, 334 A.2d 321, 327–28 (N.J. 1975), and predicts that IFCA would only apply to bad faith conduct that occurs *after* the effective date of the statute, *see Spence*, 623 F.3d at 216.  There is simply no suggestion in the text of IFCA that the statute applies retroactively to claim denials, bad faith processing delays, or any other operative conduct preceding January 18, 2022.  Similarly, the text suggests that the Legislature did not intend for IFCA to apply to all claims for UM/UIM benefits pending in the courts at the time of the statute's enactment.  This interpretation "gives plain and direct meaning to the straightforward language of the new law," *James*, 83 A.3d at 82 (citing *DiProspero*, 874 A.2d at 1048), namely that IFCA "take[s] effect immediately."  Drawing from prior interpretations of this language and focusing on the operative sentences of IFCA, this Court concludes that the Legislature did not clearly intend IFCA to apply retroactively.  *See Cruz*, 947 A.2d at 1237 (rejecting attempt to apply amendment to existing or previously adjudicated claims for benefits because amendment took effect "immediately"); *James*, 83 A.3d at 80–81 (holding that amendment affecting obligations of insurance policies did not affect coverage for accidents occurring prior to amendment's effective date because "had the Legislature intended an earlier date for the law to take effect, that intention could have been made

plain in the very section directing when the law would become effective"); *Johnson*, 143 A.3d at 265–66 (finding that amendment did not impact pending claims because Legislature did not explicitly say so).

Though it need not reach Plaintiff's argument regarding the legislative history, [see Pl.'s Opp'n at 8–9], because the Court finds the statutory text clear and unambiguous, *see J.V.*, 231 A.3d at 716 (explaining that the "interpretative process ends" in such circumstances), the Court nonetheless addresses the statements of IFCA's sponsor before proceeding to consider the other exceptions to the presumption of prospectivity.   In response to a question from State Senator John F. McKeon regarding the "effective date" of IFCA and whether it would be "fair for it to be retroactive," State Senator Nicholas P. Scutari, IFCA's sponsor, stated as follows:

> Well, the only thing I would say to that is if we – we want people to be treated fairly, we want that to start right away.   I don't know why we would let people that already have claims that are pending to be able to be dealt with unfairly and then people who have new claims, they get to be treated fairly.   That is the argument I would make is that we're dealing with just trying to have people dealt with fairly.   I don't know why the older claims, they get to be dealt with unfairly and the new claims will be dealt with fairly.

[Dec. 13, 2021, Tr. of N.J. Assemb. Comm. on Fin. Insts. & Ins. at 2:1–2, 2:6–7, 2:11–23, Pl.'s Opp'n, Ex. F, Docket No. 12-1.]   Plaintiff submits that Senator Scutari's statement demonstrates that the Legislature clearly expressed an intent that the statute apply to bad faith conduct in connection with pending claims.   [Pl.'s Opp'n at 9.]

The Court cannot agree with Plaintiff's submission.   It is well-understood in statutory interpretation that the statements of individual legislators are not expressions

on behalf of the Legislature, nor are they declarations of law. *See Johnson*, 143 A.3d at 266 (noting that a sponsor's unofficial statements are not an indication of what the Legislature intended) (citations omitted); *Cruz*, 947 A.2d at 1236 (explaining that the Legislature's silence in response to witnesses who raised their own interpretations of statutory language during the legislative process should not be construed as approval of such interpretations). Indeed, the Court draws the opposite conclusion from Senator Scutari's remarks—that the statute, as enacted, was *not* intended to apply to pending claims for UM/UIM benefits. Otherwise, Senator Scutari's concerns would have been addressed in the statutory text. *See Johnson*, 143 A.3d at 265–66 ("Had the Legislature sought to apply the amendment to all pending claims, it could have adopted the approach taken in other amendments, such as applying it to 'all actions and proceedings that accrue, *are pending* or are filed' at the time of enactment.") (quoting *Phillips*, 608 A.2d at 897).[7]

---

[7] At least one scholar has characterized the question of retroactive application of IFCA as an "open question provisionally answered." Jeffrey W. Stempel, *The 2022 New Jersey Insurance Fair Conduct Act and the Incomplete Evolution of Policyholder Protection*, 75 Rutgers Univ. L. Rev. 185, 233 (2022). Professor Stempel contends that IFCA *should* apply to UM/UIM claims that were unresolved as of the statute's effective date, whereas decided claims should not be reopened. *Id.* at 253–54. His assertion regarding unresolve claims is without citation. *Id.* Like Senator Scutari's remarks, that Professor Stempel believes such an argument to be necessary bolsters the Court's determination that the Legislature did *not* clearly intend for IFCA to apply to pending insurance claims.

Therefore, the Court concludes that the Legislature clearly intended for IFCA to apply prospectively to bad faith conduct occurring after the effective date of the statute, to the exclusion of pending UM/UIM insurance claims.

### 2.    Other Exceptions to the Presumption of Prospectivity.

Next, the Court considers whether any of the other circumstances justifying retroactive application of IFCA applies. *James*, 83 A.3d at 77. The Court thus turns to whether IFCA is merely "curative." *See id.* (explaining that the second circumstance justifying retroactive effect of a statute is whether an amendment is curative). A law is considered to be "curative" when it is "designed to 'remedy a perceived imperfection in or misapplication of a statute.' " *Id.* at 78 (quoting *Schiavo v. John F. Kennedy Hosp.*, 609 A.2d 781, 784 (N.J. Super. Ct. App. Div. 1992), *aff'd*, 620 A.2d 1050 (N.J. 1993)). "A curative statute may clarify, but may not change, the meaning of existing law." *Johnson*, 143 A.3d at 264–65 (citing *Schiavo*, 609 A.2d at 784). An amendment is curative if it does not modify the existing law in a "substantial way." *2nd Roc-Jersey Assocs. v. Town of Morristown*, 731 A.2d 1, 14 (N.J. 1999).

Plaintiff contends that IFCA is a curative law because it ameliorated the "absence of a meaningful remedy for bad faith in the context of uninsured/underinsured motorist claims." [Pl.'s Opp'n at 9–11.] She argues that IFCA did not create or modify an insurer's substantive obligations to its insured, observing that the common law duty of good faith and fair dealing requires insurers not to deny a claim in bad faith. [*Id.* at 9–10.]

20

The Court cannot agree with Plaintiff's position.   First, Plaintiff has not identified a statute that IFCA was designed to remedy in an insubstantial way because of imperfection or misapplication.   *See Schiavo*, 609 A.2d at 784.   The common law duty of good faith and fair dealing is not a statutory obligation, but a cause of action derived by implication from a contractual relationship and recognized in connection with first-party insurance claims.   *See Pickett v. Lloyd's*, 621 A.2d 445, 450, 452 (N.J. 1993).

Second, and perhaps more fundamentally, IFCA represents a transformation in the landscape of rights and duties in the insurance context, not an insubstantial or "ameliorative" clarification of existing law.   *See Johnson*, 143 A.3d at 264–65; *2nd Roc-Jersey Assocs.*, 731 A.2d at 14.   Prior to IFCA, the state depended on the New Jersey Unfair Claims Settlement Practices Act, N.J. Stat. Ann. §§ 17:29B-1 – 17:29B-13.   The law prohibits "unfair and deceptive" trade practices in the insurance industry, *id.* § 17:29B-3, and proscribes a series of defined acts, *id.* § 17:29B-4.   The Legislature granted sole authority to the Commissioner of the Department of Banking and Insurance to enforce the prohibition.   *Id.* § 17:29B-5.   Importantly, an aggrieved person, unable to file a civil action, was only entitled to "file a complaint" with the Commission.   *Id.* § 17:29B-18.   The Commissioner had the exclusive authority to investigate and pursue such complaints.   *Id.*   This all changed on January 18, 2022, when IFCA was enacted.

IFCA represents a meaningful development in the insurance industry because it provided a private cause of action to aggrieved insureds and broadened the scope of

remedies available for prevailing parties, including treble damages and attorneys' fees. N.J. Stat. Ann. § 17:29BB-3. As another court in this District recently determined when confronting the same issues in a nearly identical case, IFCA is "too drastic" a development to be regarded as simply "curative." *Torres v. USAA Cas. Ins. Co.*, 2023 WL 5274584, at *4 (D.N.J. Aug. 16, 2023) (McNulty, J.). Moreover, just because IFCA was intended to be "remedial" does not mean that the statute is thus "curative." *See* Tr. of Oral Argument at 14:4–8, *Melito v. Allstate Ins. Co.*, Case No. BUR-L-0148-23 (N.J. Super. Ct. Law Div. May 12, 2023) ("While I appreciate the plaintiff's argument here that this is a piece of legislation that's remedial in nature, that is not one of the exceptions that the [New Jersey] Supreme Court has set forth as an exception to the presumption of prospective application[.]") [Docket No. 13-3].

Here, this Court concludes that IFCA is not a curative statute. As a result, it cannot justify rebutting the presumption of prospectivity. *See James*, 83 A.3d at 77. Additionally, the Court need not address the third exception to the presumption, *see id.* (justifying a statute's retroactive effect "when the expectations of the parties so warrant"), because Plaintiff does not contend that either of the parties anticipated or relied upon the change in law. [*See generally* Pl.'s Opp'n.] Nor would it seem that Plaintiff could make this allegation: she submitted her UIM claim more than a year before IFCA was enacted. [*See* Compl. ¶ 11.] There are no allegations suggesting that the parties' expectations justify retroactive application of IFCA. [*See generally id.*] The "statutory scheme did not [] exist when the [] accident at issue took place." *Mosquera v. Vasquez*, Case No. MRS-L-0860-21 (N.J. Super. Ct. Law Div. Mar. 10, 2022).

Finally, the Court observes that most courts to consider whether IFCA applies prospectively have determined that the Legislature's intent was clear and none of the exceptions justifying retroactive effect applies. *See Torres*, 2023 WL 5274584, at *3–4, *5 (granting motion to dismiss IFCA claim without prejudice because insured's accident occurred on June 22, 2019, and IFCA "is not retroactive in its application"); *Dawson v. Allstate N.J. Prop. & Cas. Ins. Co.*, Case No. GLO-L-0440-22 (N.J. Super. Ct. Law Div. Aug. 5, 2022) (granting motion to dismiss IFCA claim with prejudice because IFCA "does not apply retroactively" and claim denial occurred in October 2021); *Melito v. Allstate Ins. Co.*, Case No. BUR-L-0148-23 (N.J. Super. Ct. Law Div. May 12, 2023) (same); *Cooper v. Zuziak*, Case No. CAM-L-0585-21 (N.J. Super. Ct. Law Div. Mar. 18, 2022) (denying motion to amend complaint to add IFCA claim because statutory text "suggests that the Act applies to claims that arise immediately after the effective date of the Act," motorist's accident occurred on September 17, 2019, and amendment would be futile accordingly); *Mosquera v. Vasquez*, Case No. MRS-L-0860-21 (N.J. Super. Ct. Law Div. Mar. 10, 2022) (same). *But see Trujillo v. Penn Nat'l Ins.*, Case No. BER-L-6505-20 (N.J. Super. Ct. Law Div. Aug. 8, 2022) (granting motion to amend complaint to add IFCA claim, as leave to amend should be granted "even if the ultimate merits of the amendment are uncertain" and Legislature did not express an intention for law *not* to apply to pending claims) (internal quotation marks and citation omitted); *Tawfiles v. Wilson*, Case No. MON-L-0178-23 (N.J. Super. Ct. Law Div. Mar. 22, 2023) (denying motion to dismiss IFCA

23

claim because, while November 2021 accident predated the statute's effective date, bad faith denial and delay concerning November 2022 benefits demand did not).

Accordingly, the Court sides with the weight of authority and concludes that IFCA does not apply retroactively. To the extent that Plaintiff alleges that Defendant denied her claim for UIM benefits in bad faith, [*see* Compl. ¶¶ 19–23], Plaintiff has not stated a viable IFCA claim. Defendant's allegedly bad faith conduct occurred in or around May 2020, [*id.* ¶ 11], and IFCA did not take effect until January 18, 2022, 2021 N.J. Laws Ch. 388, § 4. Therefore, because the cause of action was not effective when the Defendant denied Plaintiff's UIM claim, the IFCA claim must be dismissed.

### 3.   The "Continuing Violation" Theory.

Plaintiff also contends that she has stated a viable claim under IFCA because Defendant maintained a "no-pay" position throughout the underlying litigation, which stretched into 2023. [Compl. ¶¶ 15–17, 20–21.] Under Plaintiff's theory as alleged, Defendant violated IFCA after it came into effect because Defendant continued to deny Plaintiff's UIM claim on an ongoing basis and/or unreasonably delayed paying her by disputing the claim in the pending litigation. [*See* Pl.'s Opp'n at 17–18.] In support of her position, Plaintiff relies on *Tawfiles* and *Trujillo*, cited *supra*.

In *Tawfiles*, the court considered a motion to dismiss an IFCA claim asserted against an insurer. *Tawfiles v. Wilson*, Case No. MON-L-0178-23 (N.J. Super. Ct. Law Div. Mar. 22, 2023). The underlying accident occurred in November 2021, and the insured submitted a claim for UM benefits on November 9, 2022. *Id.* The *Tawfiles* court determined that there was a viable IFCA claim because the alleged bad faith

24

conduct—the insurer's claim denial—occurred after the effective date of the statute. *Id.* The court also credited the insured's "continuing violation" theory, looking to precedent addressing when a cause of action accrues for the purpose of calculating a statute of limitations. *Id.* It determined that the insurer's litigation position "restarts the clock with each successive wrong," rejecting the insurer's attempt to frame the benchmark accrual date under IFCA as the date of the underlying automobile accident. *Id.* Additionally, in *Trujillo*, the court permitted leave to add an IFCA claim after determining that the statute did not expressly exclude application to pending complaints for UM/UIM benefits. *Trujillo v. Penn Nat'l Ins.*, Case No. BER-L-6505-20 (N.J. Super. Ct. Law Div. Aug. 8, 2022).

These non-binding cases are distinguishable. Unlike in *Tawfiles*, Plaintiff here submitted a claim for UIM benefits *before* IFCA took effect, [*see* Compl. ¶ 11], and Defendant denied her claim in a disputed litigation that was pending when the statute was enacted, [*see id.* ¶¶ 11, 15]. This Court is not persuaded that the *Tawfiles* court would have permitted a "continuing violation" theory if the insured's claim had originally been denied prior to the existence of the cause of action. Additionally, unlike in *Trujillo*, Plaintiff here does not seek leave to add an IFCA claim to an existing dispute regarding an insured's entitlement to UM/UIM benefits. The standard under Federal Rule of Civil Procedure 12(b)(6) asks whether a plaintiff has stated sufficient facts, when accepted as true, to state a plausible claim for relief. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. This inquiry is not as relaxed as the standard

contemplated by N.J. Ct. R. 4:9-1. *See, e.g.*, *Kernan v. One Washington Park Urban Renewal Assocs.*, 713 A.2d 411, 421 (N.J. 1998) (explaining that motions for leave to amend should be granted "liberally," even if the ultimate merits of a claim are uncertain). Finally, as discussed above, see *supra* Section IV.D.1., this Court presumes that a newly-enacted statute does not apply to pending claims, unless the Legislature clearly expresses otherwise.

Furthermore, other New Jersey trial courts that have encountered Plaintiff's "continuing violation" theory, including under more analogous factual circumstances, have rejected it. *See, e.g.*, *Dawson v. Allstate N.J. Prop. & Cas. Ins. Co.*, Case No. GLO-L-0440-22 (N.J. Super. Ct. Law Div. Aug. 5, 2022) (dismissing IFCA claim with prejudice because bad faith allegations concerned an October 2021 counteroffer to the plaintiff's demand for policy limits and an April 2022 follow-up offer to settle claim, which was a "repeat" of the pre-IFCA action that "d[id] not create a cause of action"); Tr. of Oral Argument, *Melito v. Allstate Ins. Co.*, Case No. BUR-L-0148-23 (N.J. Super. Ct. Law Div. May 12, 2023) (rejecting "continuing denial" of claim that was asserted in 2019 because "it doesn't really make sense that a denial can just sort of continue ad infinitum until . . . the carrier change[s] its mind or bring[s] the case to some sort of resolution"); Tr. of Oral Argument, *Oshiro v. Allstate N.J. Prop. & Cas. Ins. Co.*, Case No. HUD-L-4614-20 (N.J. Super. Ct. Law Div. July 8, 2022) (considering allegations of continuing denial during ongoing litigation and denying motion for leave to add IFCA claim) [Docket No. 13-5].

Finally, as both parties appear to recognize, [see Def.'s Br. at 15–19; Pl.'s Opp'n at 13–14], the Pennsylvania Superior Court expressly rejected a theory of continuing violation when considering allegations of bad faith under a Pennsylvania insurance statute permitting court-awarded damages for bad faith conduct (*i.e.*, 42 Pa. Cons. Stat. § 8371).  In *Adamski v. Allstate Insurance Co.*, 738 A.2d 1033 (Pa. Super. Ct. 1999), an insurer allegedly denied an insured's claim for coverage without a reasonable basis. *Id.* at 1035, 1038.  The insurer originally denied the insured's claim for coverage by letter dated April 2, 1986.  *Id.* at 1034.  However, the insured's allegations of bad faith all related to conduct that occurred prior to July 1, 1990, the effective date of § 8371. *Id.* at 1038.  Refusing to "parse [the insurer's] consistent denial of coverage into numerous acts of alleged bad faith," the *Adamski* court ruled that a bad faith claim under § 8371 accrues when an insured's claim for coverage is denied.  *Id.* at 1038, 1040. An insured "may not separate initial and continuing refusals to provide coverage into distinct acts of bad faith."  *Id.* at 1042.  Because the insured alleged no separate acts of bad faith conduct following July 1, 1990, beyond conduct that merely "reaffirmed" the insurer's earlier coverage denial, the court concluded that the statutory bad faith claim was barred.  *Id.* at 1042–43.

Like the court in *Adamski*, this Court must reject Plaintiff's alleged "continuing conduct" theory that Defendant acted in violation of IFCA by maintaining a "no-pay position throughout years of litigation."  [Compl. ¶ 20.]  Plaintiff's allegations do not raise any independent acts of bad faith separate from Defendant's claim denial that

indisputably occurred prior to IFCA's enactment.  [*See id.* ¶¶ 11, 15.]  Indeed, Plaintiff has effectively acknowledged that her post-IFCA allegations of bad faith are inextricably linked to her pre-IFCA allegations of bad faith.  She contends that "her claim was denied and continued to be denied up to and through trial."  [Pl.'s Opp'n at 17.]  Under Plaintiff's theory, the distinction between retroactive and prospective application would be obliterated, and insurance companies like Defendant would be required to reexamine any claim denials occurring prior to IFCA's enactment if disputed after January 18, 2022.  *See Am. Int'l Underwriters Corp. v. Zurn Indus., Inc.*, 771 F. Supp. 690, 703 (W.D. Pa. 1991) (rejecting " 'continuing' violation consisting of successive daily bad faith denials" because such theory would require insurance companies to "reopen all claim files which had been denied prior to" the effective date of 42 Pa. Cons. Stat. § 8371 and would be "inconsistent with the repose sought to be protected by prospective application"); *see also Adamski*, 738 A.2d at 1041 (quoting *Zurn Indus.*, 771 F. Supp. at 703).  As noted above, this result was not clearly expressed in the statutory text when it easily could have been, see *supra* Section IV.D.1, so the Court cannot give Plaintiff's interpretation effect here.

In sum, because IFCA is not retroactive and Plaintiff has not alleged any bad faith conduct independent of Defendant's pre-IFCA claim denial, this Court must reject Plaintiff's theory of continuing violation and conclude that Plaintiff has failed to state a viable IFCA claim.[8]

---

[8] Determining that none of the exceptions to prospective application of IFCA applies and that Plaintiff has failed to state a viable claim, the Court need not reach

## IV.    CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff has not stated a viable IFCA claim.[9]  In an abundance of caution, the Court will dismiss Plaintiff's claim without prejudice, finding that leave to amend is not necessarily futile.  *See Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (explaining that amendment is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted").  However, Plaintiff shall duly consider whether she could prevail under any set of facts given the foregoing analysis.

An accompanying Order shall issue separately.  Fed. R. Civ. P. 58(a).

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

DATED:  **December 8, 2023**

---

Defendant's argument concerning manifest injustice.  *Cf. Cruz*, 947 A.2d at 1236 ("Only if one of these grounds is present, will we give a statute retroactive effect.").

[9] To be clear, the Court has not necessarily rendered judgment as to any other claim, to the extent asserted.  In her one-count Complaint, Plaintiff would appear to allege alternatively that Defendant's conduct violates "common law obligations related to fiduciary duty and/or good faith and fair dealing."  [Compl. ¶ 19.]  Should Plaintiff file an amended complaint, she must set forth each and every claim asserted, whether or not in the alternative, in separate counts.  The Court highly commends this as a standard practice, lest uncertainty is counsel's intention.