IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ELIZABETH ROACH<br><br>                    Plaintiff,<br><br>    v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>                    Defendant. | Civil Action No. 23-02210<br>(RMB/EAP)<br><br>OPINION |

**APPEARANCES:**

Oliver T. Barry
BARRY, CORRADO & GRASSI, P.C.
2700 Pacific Avenue
Wildwood, New Jersey 08260

    *On behalf of Plaintiff Elizabeth Roach*

Jeffrey A. Carr
Kristin H. Jones
Nicole E. Crossey
TROUTMAN PEPPER HAMILTON SANDERS LLP
301 Carnegie Center, Suite 400
Princeton, New Jersey 08543

    *On behalf of Defendant Allstate Insurance Company*

**RENÉE MARIE BUMB, Chief United States District Judge:**

In this case, Plaintiff Elizabeth Roach ("**Plaintiff**") maintains that her insurer, Defendant Allstate Insurance Company ("**Allstate**"), improperly denied her underinsured motorist benefits ("**UIM**") claim in a state-court proceeding. After Plaintiff prevailed in a jury trial, she asserted bad faith claims against Allstate under the New Jersey Insurance Fair Conduct Act ("**IFCA**"), N.J. Stat. Ann. § 17:29BB-1, *et seq.*, "and/or" at common law. [*See* State-Ct. Compl. ¶ 19, Docket No. 1-2.] The matter was removed, [Notice of Removal, Docket No. 1], and the Court dismissed her initial one-count complaint without prejudice after finding that IFCA did not apply to her UIM claim. *See generally Roach v. Allstate Ins. Co.* (*Roach I*), 2023 WL 8542463 (D.N.J. Dec. 8, 2023) (construing statutory text—"shall take effect immediately"—to bespeak an intent contrary to retroactive application, including to claims that were pending when IFCA became effective, and rejecting Plaintiff's "continuing violation" theory). The Court provided her with leave to file an amended complaint, principally so that she could specify her "alternative" claims at common law that were not clearly asserted. *See id.* at *12 & n.9. On December 29, 2023, Plaintiff filed the First Amended Complaint. [Docket No. 18.] This is now her second bite at the apple.

Pending before the Court is Allstate's Motion to Dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket No. 22.] Plaintiff has opposed the Motion, [Docket No. 29], and the Court has considered the parties' submissions without oral argument pursuant to Local Civil Rule 78.1(b).

1

Because Plaintiff's IFCA claim remains unviable, it must be dismissed. So, too, for her bad faith claim at common law: Plaintiff has failed to allege sufficient facts to establish that Allstate lacked a "fairly debatable" reason for denying her UIM claim. Accordingly, for these reasons, as more fully explained below, the Motion to Dismiss will be **GRANTED**.

I.   BACKGROUND

   A.   **Factual Background.**

On January 16, 2019, Plaintiff was struck by a drunk driver while driving in Cape May County, New Jersey. [First Am. Compl. ¶¶ 7–9, Docket No. 18.] Plaintiff alleges that the car crash caused her serious damages, including permanent spinal injuries. [*Id.* ¶¶ 9, 14.] On December 9, 2019, Plaintiff filed suit in New Jersey Superior Court against the drunk driver and his mother (the owner of the vehicle). [*Id.* ¶¶ 8, 11.] Believing both parties to be underinsured, Plaintiff filed an amended complaint on May 22, 2020, seeking UIM benefits from Allstate under an applicable insurance policy providing up to $250,000 of UIM coverage. [*Id.* ¶¶ 10, 13.[1]] She asserted that the car crash, and resulting spinal injury, caused her "significant pain and limitations on a daily basis." [*Id.* ¶ 14.] She also alleged that she received treatment for this pain, including lumbar medial branch block injections on September 23, 2020, March 31, 2021, and October 20, 2021, and lumbar radiofrequency ablations on

---

[1] As before, the Court infers from these allegations that Allstate first denied Plaintiff's application for UIM benefits in May 2020. *See Roach I*, 2023 WL 8542463, at *10 (citing Compl. ¶ 11).

2

February 1, 2022. [*Id.* ¶ 16.] Plaintiff provided Allstate with copies of medical records documenting these treatments. [*Id.* ¶ 17.]

On September 9, 2020, Plaintiff settled her claims against the drunk driver and his mother, [*id.* ¶ 12], but Allstate maintained a "no-pay" position on her insurance claim, throughout the litigation, [*see id.* ¶¶ 21–22, 23, 38–39]. Allstate disputed that the car crash was the proximate cause of Plaintiff's injuries, [*see id.* ¶¶ 28, 45], and it retained an expert witness who opined that her permanent spinal injury was not related to the accident, [*id.* ¶ 28]. Plaintiff, however, adduced expert testimony to establish the opposite conclusion. [*Id.* ¶¶ 18–19.] As the parties prepared for trial, they conducted *de bene esse* depositions of the parties' expert witnesses, [*see id.* ¶¶ 24–26], which Plaintiff alleges was "supportive" of her position that she suffered serious and permanent injuries as a result of the car crash. [*Id.* ¶ 27.] Plaintiff also identifies that, during a *de bene esse* deposition of Allstate's expert witness, Dr. John A. Cristini, M.D., he "made a number of damaging admissions including providing that upon review of post-accident diagnostic studies he saw additional findings not addressed in his narrative report(s) that could have been caused by the accident." [*Id.* ¶ 30.] Allstate received regular updates about this evidence. [*Id.* ¶¶ 35–36.]

But Allstate repeatedly refused to settle with Plaintiff. Allstate communicated its no-pay position to Plaintiff on October 13, 2021, via voicemail and on January 26, 2022, over the phone. [*Id.* ¶¶ 22, 23.] As the matter advanced towards trial, Allstate

3

again communicated on January 30, 2023, that it would not agree to a settlement of Plaintiff's claim. [*Id.* ¶¶ 38–39, 66.]

On February 6, 2023, the matter proceeded to trial. Ultimately, a jury agreed with Plaintiff and returned a $4 million verdict in her favor. [*Id.* ¶ 40.] The trial court thereafter entered judgment molding the verdict to $150,000 in accordance with the insurance policy, but "without prejudice to any bad faith rights or claims of Plaintiff." [*Id.* ¶ 41; *see also* Trial Ct. Order at 3, Docket No. 12-1 (providing that judgment is "without prejudice to any bad faith interests, rights, or claims of Plaintiff to collect additional damages . . . whether based on common law or [IFCA]").]

### B.    Procedural History.

On March 8, 2023, Plaintiff filed this action against Allstate in New Jersey Superior Court asserting, in a single count, (1) a violation of IFCA, (2) breach of fiduciary duty, and/or (3) breach of the covenant of good faith and fair dealing. [State Ct. Compl. ¶¶ 18–23.] In support of her claim(s), Plaintiff alleged that Allstate's "no-pay position throughout years of litigation" constituted an unreasonable denial of her claim for UIM benefits. [*Id.* ¶¶ 20, 22.] According to Plaintiff, this is because of the strength of the evidence adduced during the state-court proceeding. [*See id.* ¶¶ 20, 21.]

Allstate timely removed this action pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) and subsequently filed a Motion to Dismiss the IFCA claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket No. 11.] The Court granted Allstate's initial Motion, dismissing Plaintiff's statutory bad faith claim after concluding that IFCA does not apply retroactively and that Plaintiff's "continuing

4

violation" theory was not cognizable. *See Roach I*, 2023 WL 8542463, at *6–12 [Docket No. 16]. The Court provided Plaintiff with leave to amend, principally because it was not clear whether Plaintiff was asserting bad faith claims at common law. *See id.* at *12 & n.9 [Docket No. 16].

On December 29, 2023, Plaintiff filed the First Amended Complaint, asserting (1) a bad faith claim at common law (Count I) and (2) a statutory bad faith claim under IFCA (Count II). [First Am. Compl. ¶¶ 42–70.] On January 25, 2024, Allstate filed its pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Mot. Dismiss, Docket No. 22; Def.'s Mem. Supp. Mot., Docket No. 23 ("**Def.'s Br.**").] Plaintiff timely opposed, [Pl.'s Opp'n Def.'s Mot., Docket No. 29 ("**Pl.'s Opp'n**")], and Allstate filed a reply brief, [Def.'s Reply Mem. Supp. Mot., Docket No. 30 ("**Def.'s Reply Br.**")]. As the Motion is fully briefed, it is ripe for adjudication.

## II.    LEGAL STANDARD

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). To withstand a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met when there is enough factual content in the complaint to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing the sufficiency of a complaint, a court must accept as true all well-pleaded allegations in the complaint, including all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005). A court need not accept "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). However, a court may consider a document that is "integral to or explicitly relied upon in the complaint," even if the plaintiff does not attach it. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

A district court's role in reviewing the sufficiency of a complaint is thus limited: the issue is not "whether the plaintiffs will ultimately prevail" but "whether they are entitled to offer evidence to support their claims." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) (citation omitted).

6

## III.   DISCUSSION[2]

Allstate seeks dismissal of the First Amended Complaint with prejudice. [Mot. Dismiss, Docket No. 22.]  First, it contends that Plaintiff's IFCA claim continues to be premised on an impermissible "continuing violation" theory. [Def.'s Br. at 5–6.] Because the Court already rejected this theory, Allstate argues that the IFCA claim must be dismissed. [*Id.*]  Second, Allstate submits that Plaintiffs' common law and statutory claims must be dismissed because "[a] claim denial cannot, by itself, support a bad faith claim." [*Id.* at 7.]  Plaintiff's claims must be dismissed, Allstate argues, because she has failed to allege any bad faith conduct. [*Id.* at 6–8.]  The Court considers each argument in turn.

### A.   IFCA (Count II).

In Count II of the First Amended Complaint, Plaintiff renews her claim that Allstate violated IFCA by denying her application for UIM benefits and maintaining a "no-pay" position throughout the underlying litigation. [First Am. Compl. ¶¶ 52–70, Docket No. 18.]  In her amended pleading, Plaintiff explains that Allstate communicated its no-pay position on January 26, 2022, and again on January 30, 2023, even though Plaintiff provided medical records documenting her treatments for pain and expert opinions identifying the car crash as the cause of her spinal injuries.

---

[2] As previously explained, this Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of New Jersey and Allstate is an Illinois corporation and because the amount in controversy exceeds the jurisdictional threshold.  *See Roach I*, 2023 WL 8542463, at *2 n.4.

[*See id*.] She asserts that Allstate's no-pay position was unreasonable under the circumstances and violated N.J. Stat. Ann. § 17:29BB-3. [*See id.* ¶ 69.]

IFCA was signed into law on January 18, 2022. The enacting legislation provided that IFCA "shall take effect immediately." 2021 N.J. Laws Ch. 388, § 4. Under the statute, a first-party claimant can sue her insurer for "an unreasonable delay or unreasonable denial of a claim for payment of benefits" under an uninsured motorist (UM) or underinsured motorist (UIM) policy. N.J. Stat. Ann. § 17:29BB-3. The act marked a significant development for first-party claimants, as it provided a private cause of action to challenge insurers' bad faith conduct and a statutory entitlement to treble damages, pre- and post-judgment interest, and attorneys' fees. *Id.* Construing the statutory language and applying the longstanding presumption of prospectivity, this Court held that IFCA does not apply to conduct that precedes the effective date of the act.

> There is simply no suggestion in the text of IFCA that the statute applies retroactively to claim denials, bad faith processing delays, or any other operative conduct preceding January 18, 2022. Similarly, the text suggests that the Legislature did not intend for IFCA to apply to all claims for UM/UIM benefits pending in the courts at the time of the statute's enactment.

*Roach I*, 2023 WL 8542463, at *7. Accordingly, this Court determined that Plaintiff's claim was not viable under IFCA because Allstate denied her application for UIM benefits in May 2020—before the cause of action existed—and there was no reason to conclude that the Legislature sought to apply the statute retroactively. *Id.* at *10.

8

Here, as before, the Court must dismiss Plaintiff's IFCA claim because it is based on Allstate's denial of her application for UIM benefits in May 2020. [*See* Compl. ¶¶ 10, 13.] Because this conduct occurred prior to the effective date of N.J. Stat. Ann. § 17:29BB-3 as a cause of action, Plaintiff's statutory bad faith claim is not viable. *See Roach I*, 2023 WL 8542463, at *10.

Likewise, Plaintiff cannot resuscitate her claim by alleging that Allstate maintained its no-pay position after January 18, 2022, and asserting that this position represents distinct post-enactment conduct. Plaintiff alleges that Allstate "conveyed" its no-pay position on January 26, 2022, and January 30, 2023, [Compl. ¶¶ 56, 61], and that these communications represent discrete claim denials and/or constitute an unreasonable delay, [*id.* ¶¶ 62–63, 66–67]. Allstate's conduct was unreasonable, Plaintiff argues, because she submitted "more than sufficient evidence of the seriousness and permanency of her injuries" and established that the car accident "proximately caused" her injuries. [*Id.* ¶ 68.] In other words, Plaintiff continues to rely on a "continuing violation" theory.

As the Court previously explained, this theory is not cognizable here. *See Roach I*, 2023 WL 8542463, at *11–12. Plaintiff's post-IFCA allegations of bad faith remain "inextricably linked to her pre-IFCA allegations of bad faith." *Id.* at *12. Like the court in *Adamski v. Allstate Insurance Co.*, 738 A.2d 1033, 1038 (Pa. Super. Ct. 1999), this Court will not "parse [the insurer's] consistent denial of coverage into numerous acts of alleged bad faith." Because Allstate first denied Plaintiff's UIM claim in May 2020 before IFCA took effect, the Court cannot construe Allstate's consistent denial

9

of coverage as distinct, post-IFCA conduct. *See id.* at 1042–43 (barring bad faith claim under 42 Pa. Cons. Stat. § 8371 where insurer initially denied coverage in 1986 and reaffirmed earlier coverage denial after July 1, 1990, the statute's effective date). To do so, the Court explained, would "obliterate[]" the distinction between retroactive and prospective application of the statute and disturb the finality and "repose" protected by the presumption of prospectivity. *See Roach I*, 2023 WL 8542463, at *12. Had the Legislature sought to apply IFCA to claims pending in the courts at the time of the statute's effective date, it could have said so. *See Johnson v. Roselle EZ Quick LLC*, 143 A.3d 254, 265 (N.J. 2016) ("Had the Legislature sought to apply the amendment to all pending claims, it could have adopted the approach taken in other amendments, such as applying it to 'all actions and proceedings that accrue, are pending or are filed' at the time of enactment." (quoting *Phillips v. Curiale*, 608 A.2d 895, 987 (N.J. 1992))). Absent such an indication, the Court cannot permit her to proceed under the statute.

In sum, Plaintiff's IFCA claim is not viable.[3] Because any further amendment of this claim would be futile, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir.

---

[3] For the avoidance of doubt, the Court holds in Section IV.A. only that Plaintiff's allegations of bad faith do not state a plausible violation of IFCA because Allstate denied her application for UIM benefits before the statute was effective and the Court does not construe the statute to apply to pending claims. Thus, Allstate's continued refusal to settle with Plaintiff even after IFCA took effect does not represent distinct conduct for which it can be liable under N.J. Stat. Ann. § 17:29BB-3. The Court does not hold, however, that an insurer can escape liability under IFCA, as a general matter, by denying an insured's claim and maintaining its position in the face of increasingly probative evidence. The Court agrees with Plaintiff's submission that the insurance claims process "is a dynamic one" that "requires consideration of any new information presented." [Pl.'s Opp'n at 8.] When IFCA is applicable, unlike

2008) ("[A] district court must permit a curative amendment unless such an amendment would be inequitable or futile." (citation omitted)); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (explaining that amendment is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted" (citation omitted)), the Court will dismiss Count II of the First Amended Complaint with prejudice.

### B.    Bad Faith (Count I).

In Count I of the First Amended Complaint, Plaintiff asserts that Allstate's refusal to provide UIM coverage violated its common law duty of good faith and fair dealing. [First Am. Compl. ¶¶ 43–44, 50–51.] Plaintiff alleges that Allstate maintained a "no-pay" position in bad faith because it disregarded Plaintiff's evidence concerning the severity of her spinal injury and Plaintiff's experts' opinions identifying the car crash as its cause. [*See, e.g.*, *id.* ¶ 44.] Seeking to dismiss Plaintiff's common law and statutory bad faith claims, Allstate argues that "[a] claim denial cannot, by itself, support a bad faith claim" and that Plaintiff has failed to allege any bad faith conduct. [Def.'s Br. at 7, 8.]

Under New Jersey law, "every insurance contract contains an implied covenant of good faith and fair dealing." *Price v. N.J. Mfrs. Ins. Co.*, 867 A.2d 1181, 1185 (N.J. 2005) (first citing *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 84 (N.J. 1993); then citing

---

here, it requires insurers to process and resolve claims for insurance benefits in good faith, including by modifying a litigation position where opposition to an insured's claim becomes unreasonable under the circumstances.

11

*Griggs v. Bertram*, 443 A.2d 163, 170 (N.J. 1982)). In *Pickett v. Lloyd's*, 621 A.2d 445, 450 (N.J. 1993), the New Jersey Supreme Court recognized that every insurance company owes a common law duty to its insureds to process first-party claims in good faith. Considering the scope of that duty, the *Pickett* court explained that an insurer will not be liable in tort for denying a claim that is "fairly debatable." *Id.* at 453. Rather, an insured can establish an insurer acted in bad faith if she can show that (1) the insurer lacked "a reasonable basis for denying benefits of the policy" and (2) that the insurer knew or recklessly disregarded "the lack of a reasonable basis for denying the claim." *Id.* (quoting *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 319 (R.I. 1980)).

Under this "fairly debatable" standard, an insured who was denied insurance benefits cannot assert a bad faith claim unless she could have "established as a matter of law a right to summary judgment on the substantive claim." *Id.* at 454. In other words, "if there are material issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith," *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004), because "a question of fact permits an insurer to 'fairly debate' an insured's claim," *Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 401 (D.N.J. 2000). "The rationale for this legal principle is based upon the potential *in terrorem* effect of 'bad faith' litigation upon the insurer." *Polizzi Meats, Inc. v. Aetna Life & Cas. Co.*, 931 F. Supp. 328, 334 (D.N.J. 1996). "An insurer should have the right to litigate a claim when it feels there is a question of law or fact which needs to be decided before it in good faith is required

to pay the claimant." *Hudson Universal, Ltd. v. Aetna Ins. Co.*, 987 F. Supp. 337, 341 (D.N.J. 1997) (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wis. 1978)).

Where a bad faith complaint fails to show the non-existence of disputed facts as to the underlying claim, courts will grant an insurer's motion to dismiss. *See, e.g.*, *Snowden v. Standard Ins. Co.*, 2024 WL 1154471, at *3 (D.N.J. Mar. 18, 2024) (recognizing that a plaintiff is not entitled to assert a claim for bad faith if she cannot establish a right to summary judgment on the substantive contract claim—"including at the motion to dismiss stage"); *Kousis v. Fid. & Guar. Ins. Underwriters, Inc.*, 2023 WL 6141237, at *4 (D.N.J. Sept. 20, 2023) (dismissing bad faith complaint based on insurer's coverage denial where insured failed to include definitions of policy terms, describe nature of losses, or otherwise specify bad faith conduct); *Smith v. State Farm Fire & Cas. Co.*, 2020 WL 6938432, at *7 (D.N.J. Nov. 25, 2020) (Bumb, J.) (granting insurer's motion to dismiss because insured failed to raise a genuine issue of material fact to meet the "relatively high pleading standard for a bad faith claim"); *Fuscellaro v. Combined Ins. Grp.*, 2011 WL 4549152, at *5 (D.N.J. Sept. 29, 2011) (dismissing bad faith claim at pleading stage in part because insured's allegation that insurer's reason for denying her claim was "not even debatably valid" was a legal conclusion in the guise of a factual allegation). Said differently, courts dismiss conclusory complaints that fail to plausibly allege bad faith conduct, *see, e.g.*, *Knaak v. Allstate Ins. Co.*, 2023 WL 4784205, at *4 (D.N.J. July 27, 2023) (dismissing bad faith complaint that failed to contain sufficient factual allegations to show an absence of a reasonable basis for

denying an insured's claim for UIM coverage); *Costa v. Allstate N.J. Ins. Co.*, 2023 WL 4418582, at *2 (D.N.J. July 10, 2023) ("Complaints will not survive dismissal where plaintiffs recite only conclusory allegations and otherwise fail to offer facts demonstrating the plausibility of their bad faith claims."); *Carfora v. Allstate N.J. Ins. Co.*, 2023 WL 2266226, at *1 (Feb. 28, 2023) (dismissing bad faith claims because "Plaintiff did not allege sufficient facts to suggest that Allstate lacked a reasonable basis to deny Plaintiff's UIM claim"), or that rely merely on a claim denial to raise an inference of bad faith, *see, e.g.*, *Raritan Bay Fed. Credit Union v. Cumis Ins. Soc'y*, 2009 WL 2223049, at *3 (July 23, 2009) ("[T]he mere allegation that [the insurer's] denial of coverage inferentially establishes bad faith relies on the very speculation that *Twombly* forbids.").

Here, Plaintiff has not alleged sufficient facts to maintain her bad faith claim under common law.[4] She has failed to plead facts to establish that Allstate had *no* reasonable basis for denying her application for UIM benefits. *See Pickett*, 621 A.2d at 453. True, Plaintiff alleges that she provided Allstate with records to establish the "seriousness and permanency of her injuries and that they were proximately caused by the [car] accident." [First Am. Compl. ¶ 45; *see also id.* ¶ 17.] Additionally, she alleges that she presented to a hospital and suffered "significant" and "debilitating" pain. [*Id.* ¶¶ 47–48.] She also received periodic treatment for her pain, [*id.* ¶¶ 15–16,

---

[4] Because the Court has concluded that Plaintiff's statutory bad faith claim under IFCA is not viable, *see supra* Section IV.A., the Court confines its analysis in Section IV.B. to Plaintiff's bad faith claim under common law.

14

47], and she introduced expert opinions and testimony to establish that the car crash caused her permanent spinal injury, [*id.* ¶¶ 18–19, 49]. But these allegations simply do not establish that Allstate had *no reasonable basis* to deny her application for UIM benefits or dispute her claim in the underlying litigation.

To begin with, Plaintiff has not provided the UIM policy or otherwise explained why Allstate's refusal to provide coverage was unreasonable under the terms of that instrument. Without sufficient information concerning the insurance policy, the Court cannot determine whether Plaintiff has demonstrated a right to UIM coverage. *See Ketzner*, 118 F. App'x at 599 ("[P]laintiff must be able to establish, as a matter of law, a right to summary judgment on the substantive claim; if [P]laintiff cannot establish a right to summary judgment, the bad faith claim fails." (citing *Pickett*, 621 A.2d at 454)). This is a sufficient reason for dismissing her claim. *See, e.g.*, *Kousis*, 2023 WL 6141237, at *4 (dismissing complaint for alleging in conclusory fashion that coverage denial was in bad faith where insured failed to provide policy definitions and describe the nature of the losses that were covered).

In any case, the Court affords Plaintiff some reasonable inferences. *See Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005) (court permitted to draw reasonable inferences from well-pleaded allegations in complaint). Plaintiff focuses her allegations on the link between the car crash and her spinal injuries. She appears to claim here that there was no genuine dispute that her injuries were proximately caused by the crash, that she was entitled to UIM coverage as a result, and that Allstate's contrary position demonstrates its bad faith. [*See, e.g.*, Compl. ¶¶ 44–51; Pl.'s Opp'n

15

at 5–7.] The Court assumes, based on the parties' submissions, that the only issue precluding Plaintiff's UIM coverage was proximate causation.

Plaintiff's own pleading, however, discloses that proximate causation was "fairly debatable." *See Pickett*, 621 A.2d at 453–54. In the First Amended Complaint, Plaintiff refers to the testimony of Allstate expert, Dr. John A. Cristini, M.D., an orthopedic surgeon. [First Am. Compl. ¶ 28.] He testified that Plaintiff suffered "permanent spinal damage[] but opine[d] that it was not related to the accident." [*Id.*] Yet Plaintiff alleges that he "made a number of damaging admissions" during cross-examination—namely that "he saw additional findings not addressed in his narrative report(s) that could have been caused by the accident." [*Id.* ¶ 30.] The Court considers these allegations, as supplemented by Dr. Cristini's trial (*de bene esse*) testimony, which is integral to the First Amended Complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (explaining that a court may "generally consider only the allegations contained the complaint, exhibits attached to the complaint[,] and matters of public record"); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (observing, however, that court may consider a document "integral to or explicitly relied upon in the complaint"). During cross-examination, after reviewing imaging of Plaintiff's back, Dr. Cristini identified—for the first time—"a broad bulging at L5-S1." [Trial Tr. at 63:14–16, Docket No. 30-3.] The bulging was not identified in his expert report, and he acknowledged that it could have been caused by the car crash. [*See id.* at 64:4 ("It's possible.").] But he ultimately opined that the car crash ***did not cause*** the L5-S1 bulge. [*See id.* at 65:1 ("Not in my opinion.").] Plaintiff appears to claim that

16

this testimony, in combination with her own evidence, conclusively establishes her entitlement to UIM coverage by demonstrating that proximate causation was not genuinely disputed. [*See* Compl. ¶¶ 30–33, 50–51.]

Having reviewed the First Amended Complaint's allegations and Dr. Cristini's testimony, the Court must disagree with Plaintiff. It cannot conclude that the issue of proximate causation was *not* "fairly debatable." As Plaintiff's pleading makes clear, Allstate maintained that proximate causation was a genuinely disputed issue, and it introduced expert testimony from a physician who opined that the car crash was not the proximate cause of Plaintiff's spinal injuries. Dr. Cristini did not change his opinion during cross-examination, notwithstanding Plaintiff's attempt to elicit that result, and Plaintiff has provided no allegations suggesting that Dr. Cristini's testimony was made in bad faith. It is, of course, beside the point that a jury ultimately rejected Allstate's position and agreed with Plaintiff, awarding her $4 million. *See Hudson Universal*, 987 F. Supp. at 341 (explaining that the "fairly debatable" standard "is premised on the idea that when an insurer denies coverage with a reasonable basis to believe that no coverage exists, it is not guilty of bad faith even if the insurer is later held to have been wrong"). Because Plaintiff has not satisfied her pleading burden here by alleging sufficient facts to show that Allstate's position was unreasonable and that she was entitled to summary judgment in the underlying litigation, the Court has

17

no basis to permit Plaintiff to proceed on her bad faith claim.[5] *See Ketzner*, 118 F. App'x at 599 ("[P]laintiff must be able to establish, as a matter of law, a right to summary judgment on the substantive claim; if [P]laintiff cannot establish a right to summary judgment, the bad faith claim fails." (citing *Pickett*, 621 A.2d at 454)). Therefore, the Court will dismiss Count I of the First Amended Complaint as well. *See, e.g.*, *Snowden*, 2024 WL 1154471, at *3 (dismissing bad faith claim at pleading stage because of insured's failure to establish entitlement to summary judgment on substantive claim in underlying dispute); *Kousis*, 2023 WL 6141237, at *4 (same); *Smith*, 2020 WL 6938432, at *7 (same); *Fuscellaro*, 2011 WL 4549152, at *5 (same).

    Finally, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citation omitted). Amendment is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). Because Allstate introduced expert testimony disputing proximate causation and Plaintiff has provided no allegations establishing that this testimony was made in bad faith, her pleading strongly suggests that the underlying dispute was "fairly debatable." Accordingly, further amendment would appear to be futile. *See Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 401 (D.N.J. 2000) (explaining that the *Pickett* "fairly debatable" standard

---

[5] Because Plaintiff has not established with sufficient allegations that her UIM claim was not "fairly debatable," *see Ketzner*, 118 F. App'x at 599, the Court has no cause to consider whether Allstate knew or recklessly disregarded that there was no reasonable basis for its refusal to provide coverage.

18

requires court to dismiss a bad faith claim if the insured could not have established a right to summary judgment as to the underlying claim). The Court is mindful that this is Plaintiff's second attempt to set forth plausible claims and, as a result, dismissal with prejudice is typically warranted. *See Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 512 (D.N.J. 2014) (dismissing amended complaint with prejudice where plaintiff had already been given "a second bite at the apple"). Still, it will afford Plaintiff one final opportunity. She may file a motion to amend explaining why further amendment is not futile. If she does not, Count I of the First Amended Complaint will be dismissed with prejudice. For the time being, the Court will dismiss Count I *without prejudice*.

## IV.   CONCLUSION

Accordingly, for the reasons set forth above, the Court will grant Allstate's Motion and dismiss the First Amended Complaint. An accompanying Order shall issue separately.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

DATED: **August 14, 2024**